UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 13 C 3715 |
| | ) | (No. 07 CR 263-4) |
| | ) | |
| ONDRAY MCKNIGHT | ) | Judge Rebecca R. Pallmeyer |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Ondray McKnight was convicted by a federal jury in October 2009 of two felony drug offenses. He is currently serving a 300-month prison sentence for those crimes. On May 17, 2013, McKnight moved to vacate his conviction and sentence [1] pursuant to 28 U.S.C. § 2255. In his habeas petition, he presents 16 grounds for relief—and a few more in two separate motions for leave to amend his complaint [13, 20]. The grounds can be grouped into four categories: (1) ineffective assistance of trial counsel; (2) malicious prosecution; (3) trial court errors; and (4) ineffective assistance of appellate counsel.

The Government argues that Petitioner's claims are meritless. For the reasons explained below, McKnight's second motion to amend his complaint [20] is denied as untimely filed, and his § 2255 petition [1] is denied. The court declines to grant a Certificate of Appealability on any issue.

## FACTS AND PROCEDURAL HISTORY

### I.   Background and Arrest[1]

In 2003, the Drug Enforcement Agency ("DEA") began investigating Victor Thompson, a high-ranking member of the Gangster Disciples street gang in Chicago. *McKnight*, 665 F.3d at 788. Thompson managed a drug distribution network on Chicago's south side; the network

---

[1]   The following facts are taken from the Seventh Circuit's decision affirming this court's judgment of conviction and prison term on direct appeal. *See United States v. McKnight*, 665 F.3d 786, 788 (7th Cir. 2011).

1

included individuals who supplied drugs wholesale to the operation, dealers who retailed the drugs to customers, and lookouts who warned of nearby police officers. *Id.* To gather evidence on Thompson's activities, the DEA, in conjunction with the Chicago Police Department, used confidential informants, undercover police officers, controlled buys, surveillance, and wiretapping. *Id.* One member of the network, Shawn Denton, eventually became the Government's chief witness in the case. *Id.*

In 2007, the Government filed a criminal complaint against eight members of the network, including McKnight. *McKnight*, 665 F.3d at 788. The complaint alleged 30 criminal counts against McKnight and six codefendants; those counts included weapons offenses, charges of conspiracy, drug distribution, and using a telephone in furtherance of the conspiracy. *Id.* Everyone pleaded guilty except for McKnight; he proceeded to trial. *Id.* at 789.

## II. Trial

At McKnight's trial, the Government relied primarily on Denton, who had been indicted on six charges and was cooperating in exchange for a favorable sentencing recommendation. He "provided testimony about the Gangster Disciples, Thompson's drug operation and Mr. McKnight's specific role in it, as well as [Denton's] interpretation of the wiretap recordings." *Id.* Beginning in 2006, Denton testified, McKnight paid Thompson a $1500 weekly fee for the privilege of supplying Thompson's dealers with heroin, cocaine base, and marijuana. *McKnight*, 665 F.3d at 789. The terms of that arrangement changed at some point, though, because Thompson wanted more of the profits gleaned from heroin sales. *Id.* Under the new agreement, Thompson required McKnight to sell him wholesale heroin quantities, which Thompson would then repackage and distribute himself. McKnight continued to supply Thompson's dealers directly with cocaine base and marijuana. *Id.*

The Government relied extensively on Denton's testimony interpreting wiretapped communications among the members of the drug distribution network. During Denton's direct examination, the Government played 37 phone calls related to the conspiracy, and asked

Denton to interpret certain code terms used in the calls to avoid detection. *Id.* McKnight was a participant in 28 of the calls and a topic of conversation in seven others, all of which connected McKnight to the conspiracy's illegal activity. *McKnight*, 665 F.3d at 789. Mark Kusatzky, Petitioner's trial counsel, attempted to undermine Denton's testimony as being self-serving and unreliable. *Id.* Kusatzky focused on Denton's prior criminal history and the favorable sentencing recommendation Denton expected to receive in exchange for testifying. *Id.* McKnight did not offer any evidence himself, nor did he testify. *Id.*

After the close of evidence, the Government proposed the following jury instruction:

> Sometimes the government uses undercover agents and undercover informants who may conceal their true identities in order to investigate suspected violations of law. In the effort to detect violations of the law, it is sometimes necessary for the government to use ruses, subterfuges and employ investigative techniques that deceive. It is not improper or illegal for the government to use these techniques, which are a permissible and recognized means of criminal investigation. Whether or not you approve of such techniques[] should not enter into your deliberations in any way.

*McKnight*, 665 F.3d at 789–90. The court allowed the instruction, with minor stylistic changes, over Kusatzky's objections. *Id.* at 790.

The jury convicted Petitioner of two charges: conspiracy to distribute a controlled substance, *see* 21 U.S.C. § 846, and using a telephone to facilitate distribution of a controlled substance. *See* 21 U.S.C. § 843; *McKnight*, 665 F.3d at 790. After denying his motion for acquittal and reconsideration of that motion, the court sentenced Petitioner to 300 months' imprisonment and required him to pay a $1,000 fine to be earned from his participation in the Inmate Financial Responsibility Program ("IFRP"). *Id.*

## III. Direct Appeal and Post-Conviction Proceedings

Petitioner timely appealed his conviction to the Seventh Circuit, arguing through counsel that (1) the trial court erred by giving the Government's "deceptive investigative techniques" jury instruction and that he was prejudiced by this alleged error; and (2) he should not be required to participate in the IFRP. *Id.* at 790. On November 22, 2011, the Court of Appeals affirmed the

verdict and 300-month prison term but vacated the IFRP requirement.  *See McKnight*, 665 F.3d at 795.  McKnight then petitioned for a writ of *certiorari* from the United States Supreme Court, claiming the jury instruction was prejudicial error.  (Habeas Pet. [1], 3.)  The Court denied the *certiorari* petition on June 11, 2012.  (*Id.*)

Petitioner filed this § 2255 habeas petition on May 17, 2013, alleging 16 grounds for relief.  On August 14, 2013, Petitioner filed a motion to amend [13] his petition, asserting that the holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), alters the drug quantity calculation in his case and mandates that he be re-sentenced at a lower Guidelines range. (Mot. to Amend Hab. Pet. [13], 1–2.)  Petitioner filed a second motion to amend his petition on April 14, 2014 [20], this time challenging his sentence on another basis: he claims the court improperly relied on a state drug conviction to enhance his sentence under 21 U.S.C. § 851, and as a second predicate offense, resulting in Petitioner's being deemed a career offender under U.S.S.G. § 4B1.1.  That drug offense, Petitioner argues, is not in fact a part of Petitioner's official criminal history.  (*See* Second Mot. to Amend Hab. Pet. [20], 2.)  He tethers this allegation to additional ineffective assistance of counsel claims: that trial counsel did not "proficiently investigate [P]etitioner's criminal history in its entirety;" and that trial counsel did not "investigate or challenge the non-existence of a prior state drug conviction" that subjected him to a twenty-year mandatory minimum under § 851 and that resulted in his classification as a career offender for the purposes of the Guidelines.  (*Id.*)  He also claims his trial counsel was ineffective for failing to contact the Cook County Clerk's Office to determine whether the documents used to enhance his sentence, in fact, exist.  (*Id.*)

## DISCUSSION

Relief under 28 U.S.C. § 2255 "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice," including where the sentence imposed by the court exceeded the maximum sentence authorized by law.  *Blake v. United States*, 723 F.3d

4

870, 878–79 (7th Cir. 2013); 28 U.S.C. § 2255(a). Generally, before a court may consider a § 2255 petition, the claims brought in it must have been raised and exhausted on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). A claim not previously raised is procedurally defaulted, and a court may not consider it on habeas review unless the petitioner demonstrates both cause and prejudice. *Massaro*, 538 U.S. at 504. The only exception to this requirement is that a petitioner may raise an ineffective assistance of counsel claim in a § 2255 petition regardless of "whether or not the petitioner could have raised the claim on direct appeal." *Id.*

## I. Ineffective Assistance of Trial Counsel

In assessing a claim of ineffective assistance of trial counsel, the court will "strongly presume" that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). The burden to demonstrate a trial counsel's constitutional deficiencies rests with Petitioner, who must establish two elements: "that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced as a result." *Jones v. Butler*, 778 F.3d 575, 583 (7th Cir. 2015) (citing *Strickland*, 466 U.S. at 687–88). To satisfy the second element, Petitioner must show that there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Petitioner brings several ineffective assistance of trial counsel claims, which the court turns to now.

### A. Ground One

In Ground One, McKnight claims that his trial counsel was ineffective for failing to request a suppression hearing to challenge the admissibility of Denton's testimony. According to McKnight, trial counsel learned "of some untruth by Shawn Denton in his proffer statements

and grand jury testimony of substantial cooperation that resulted in an investigation that proved Shawn Denton's willingness to attest falsely." (Habeas Pet. at 9.) In Petitioner's reply brief supporting his § 2255 petition [16], he claims that Denton falsely testified before the grand jury that he had witnessed Petitioner kill a man in 2006. (Reply to Gov't Resp. to Habeas Pet. [16], 2.) He also points to inconsistencies between Denton's proffered statement and his grand jury testimony: in his grand jury testimony, Denton maintained that Petitioner did not commit any robberies with McKnight, while in his proffer, Petitioner alleges Denton lied and said McKnight was at least an accomplice to some of these acts. (*Id.*)

This claim fails for a few reasons. First, to prevail on an ineffective assistance claim premised "on counsel's failure to present a motion to suppress, [the Court of Appeals has] required that a defendant prove the motion was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). Petitioner cannot meet this standard. First, inconsistencies— indeed, even falsehoods—in Denton's testimony do not, standing alone, require the conclusion that a motion to suppress Denton's testimony as unreliable would have succeeded. As the Seventh Circuit has explained, "witnesses are prone to fudge, to fumble, to misspeak, to misstate, to exaggerate. If any such pratfall warranted disbelieving a witness's entire testimony, few trials would get all the way to judgment." *United States v. Edwards*, 581 F.3d 604, 612 (7th Cir. 2009) (quoting *Kadia v. Gonzalez*, 501 F.3d 817, 824 (7th Cir. 2007)). Given that Denton's task was to interpret phone calls, evidence which, on its own, implicated McKnight in the conspiracy, other inconsistencies in Denton's testimony at various parts of the proceedings did not so vitiate Denton's reliability as to disqualify him. Indeed, regardless of the veracity of Denton's testimony at the grand jury proceedings that McKnight killed a man in 2006, that testimony (a) was not presented to the jury, and (b) did not bear on the facts supporting Petitioner's convictions for drug conspiracy offenses. *Cf. United States v. Christ*, 513 F.3d 762, 774–75 (7th Cir. 2008) (when viewing evidence erroneously admitted to the jury, the court considers the importance of the testimony to the Government's case).

Other rulings this court made in the criminal case support its decision to deny relief on Petitioner's claim here: McKnight's Rule 29 motion for judgment of acquittal based on Denton's purportedly false testimony, for example, was denied, and the court explained its reasoning as follows:

> Each of the arguments he makes in support of the motion challenge the credibility of the government's central witness, Shawn Denton, who pleaded guilty and testified against McKnight. Challenges to the weight of evidence are notoriously unsuccessful, and this one is no exception. Denton is, of course, a drug dealer whose credibility might be questioned. The jury received the appropriate cautionary instruction, however, and Denton's testimony was corroborated by recorded phone calls in which McKnight could be heard discussing transactions. It is the jury's role, not that of this court, to assess Denton's credibility.

(*United States v. Thompson et al.*, 07-cr-263-04, Dec. 16, 2009, Order [280].) Further, at sentencing, the court denied McKnight's reconsideration of his Rule 29 motion and expressly found that Denton did not perjure himself at trial. (Sentencing Trans. at 6:7–11.)

The record reflects that Kusatzky, rather than filing a motion to suppress Denton's testimony (which would not have succeeded), chose instead to undermine the veracity of Denton's testimony through cross-examination. Such a decision was a matter of strategy, and "when defendants attack trial counsel's strategy choices, [the court] offer[s] enormous deference to those choices[.]" *United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993). Any argument that Kusatzky was ineffective in cross-examining Denton, moreover, is a non-starter. "[D]eciding what questions to ask a prosecution witness on cross-examination is a matter of strategy," *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008), so the court applies enormous deference when reviewing the substance of Kusatzky's cross-examination of Denton. But even without that deference, the court observes that Kusatzky's cross-examination of Denton was robust and exhaustive: He highlighted inconsistencies between Denton's direct testimony and his previous statements made to law enforcement. (*See* Tr. Trans. Vol. II, *United*

*States v. Thompson et al.*, 07-cr-263-04 [397], 255–304.)[2]  He alerted the jury to Denton's expectation of a reduced sentence in exchange for testifying, as well as to Denton's extensive experience in criminal activity, primarily drug dealing and armed robbery.  (*Id*; *see also* Tr. Trans. Vol. III [398], 330–343.)   More broadly, though Denton was the Government's chief witness, the thrust of his testimony was to provide context for the phone call transcripts implicating McKnight in the conspiracy.  The court is hard-pressed to think of what other strategy Kusatzky could have employed to impeach Denton.  And Petitioner himself suggests no line of questioning that would have been more effective.  He has therefore failed to rebut the "strong presumption" that Kusatzky's "conduct falls within the wide range of reasonable professional assistance."  *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (citation omitted).

**B.    Ground Two**

Ground Two is similarly without merit.  Petitioner suggests Kusatzky was ineffective for not requesting a "multiple conspiracies" jury instruction.  (Habeas Pet. at 9.)  True, in cases where "the evidence produced at trial does not support the conspiracy alleged in the indictment, the court should instruct the jury 'that evidence relating to the other conspiracy or conspiracies disclosed may not be used against him under any other circumstances.'"  *United States v. Longstreet*, 567 F.3d 911, 921 (7th Cir. 2009) (quoting *United States v. Lindsey*, 602 F.2d 785, 787 (7th Cir. 1979)).  But when a defendant is tried alone, a multiple conspiracies instructions is typically unnecessary so long as the jury is properly instructed on the nature of the conspiracy charge.  *Cf. United States v. Martin*, 618 F.3d 705, 735 n. 30 (7th Cir. 2010) (explaining that when a defendant is tried alone, there is less need for a multiple conspiracies instruction, because that instruction "is generally designed for trials involving multiple defendants engaged

---

[2]     The trial and sentencing transcripts comprise five volumes and are found in McKnight's criminal docket.  (*See United States v. Thompson et al.*, 07-cr-263-04, Tr. Trans. Vols. 1–5, Docs. 397–400.) References to the transcripts in this opinion will list the volume number and docket entry, along with pin cites where appropriate.

in multiple conspiracies" (quoting *United States v. Anguiano*, 873 F.2d 1314, 1318 (9th Cir. 1989))).

In this case, the court accurately instructed the jury that to convict McKnight of conspiracy, the jury was required to find that he knowingly became of a member of the conspiracy charged in the indictment with the intention to further it, even if he did "not join at the beginning or know all the other members or the means by which its purpose was to be accomplished." (Tr. Trans. IV [399], 461.) This instruction closely mirrors the Seventh Circuit's Pattern Jury Instruction concerning membership in a conspiracy. *See* Membership in Conspiracy, 7th Cir. Pat. Jury Instructions § 5.10 ("To be a member of a conspiracy, a defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the illegal goals of the conspiracy were to be accomplished."). Importantly, so long as the court properly "instructs the jury on the nature of the conspiracy charge, emphasizing that the Government must prove that the defendant intentionally agreed to advance the aim of the conspiracy, there is usually no need for a multiple conspiracies instruction when a defendant is tried alone." *Martin*, 618 F.3d at 735 n. 30. Kusatzky did not error in failing to request a multiple conspiracies instruction, so this claim fails, too.

### C. Grounds Three, Four, and Eleven

Grounds Three and Four allege that Kusatzky was ineffective because he did not challenge evidence at trial related to McKnight's gang affiliation or to violence associated with the conspiracy before McKnight joined it in 2006. (Habeas Pet. at 9.) Ground Eleven asserts that the trial court erred in admitting this evidence.

These claims fail on the merits. The indictment specifically alleged that the conspiracy involved Thompson's use of his "high ranking" position in the Gangster Disciples to facilitate his drug-trafficking activities, including extorting other drug dealers to pay Thompson for the privilege to sell drugs in his territory, and using weapons "to advance the conspiracy's

objectives." (*See* Indictment, *United States v. Thompson et al.*, 07-cr-263-04 [68], ¶¶ 3, 9, 12.) Testimony at trial established these allegations, as Denton testified that (a) Thompson told Denton that McKnight was a Gangster Disciple, and (b) Denton saw McKnight shake hands with other people in a way that evinced his gang membership. (Tr. Trans. II at 141.) Denton also testified that he fired guns at a rival dealer's location in 2002 to scare off customers (*id.* at 145–149), but acknowledged that Petitioner had not yet joined the conspiracy when this shooting took place. (*Id.* at 163:22–164:6.) The court recognizes that evidence of gang involvement "must be considered carefully to avoid undue prejudice." *United States v. Richmond*, 222 F.3d 414, 417 (7th Cir. 2000). The nature of the conspiracy charged in the indictment, however, specifically contemplated admitting at least some evidence related to Petitioner's gang membership, and the Government is allowed "to complete 'the story of the crime on trial.'" *Id.* (quoting *United States v. Akinrinade*, 61 F.3d 1279, 1285 (7th Cir. 1995)). The gang evidence was limited—Denton testified that Victor Thompson was a high-ranking member of the Gangster Disciples, and that McKnight was a member but held an unspecified lower rank. (*See* Tr. Trans. II at 139:13–24; 141:4–143:1.) Given the nature of the conspiracy charged in the indictment and the limited testimony used to corroborate that charge, the evidence avoided "undue prejudice" to Petitioner, and his counsel was therefore not ineffective for failing to challenge it. Regardless, any error in failing to challenge this evidence is harmless in the face of dozens of incriminating phone calls that were played to the jury. There is no reasonable probability that, absent this alleged error, the trial would have turned out differently. *See Jones*, 778 F.3d at 583 (citing *Strickland*, 466 U.S. at 687–88).

Similarly, counsel was not ineffective for failing to challenge Denton's testimony that he fired a gun at a rival gang's location prior to McKnight's joining the conspiracy in 2006, as the court instructed the jury that it could not "consider evidence of activity prior to 2006 as evidence of guilt as to the defendant." (Tr. Trans. IV. at 463.) For these same reasons, Ground Eleven fails, as the court finds no error in admitting this evidence at trial.

## D.     Ground Five

Ground Five claims Kusatzky was constitutionally ineffective for failing "to petition for an evidentiary hearing as to a foreseeable drug quantity." (Habeas Pet. at 9.)  At sentencing, the court heard from both sides on the issue of drug quantity, but ultimately noted that, because McKnight was deemed a career offender under § 4B1.1 of the U.S. Sentencing Guidelines, his guidelines range was 360 months to life imprisonment, and drug quantity would not affect this range:

> I think it's fair to conclude, then, that regardless of how -- in the government's view, regardless of how we calculate the guidelines, they result in the same range. Whether the offense level is as low as 37 or as high as 42, the guideline is 360 to life because Mr. McKnight's status as a career offender means that the Court must conclude that his criminal history category is Category VI.

(*See* Sentencing Trans. [400], 11:6–13.)  The career offender designation, not drug quantity, was the lodestar in determining Petitioner's sentencing range, so Kusatzky's strategic decision not to request an evidentiary hearing on drug quantity does not constitute ineffective assistance. The claim fails.

## E.     Ground Six

In Ground Six, Petitioner challenges trial counsel's decision not to present any evidence on McKnight's behalf.  (Habeas Pet. at 10.)  Petitioner nowhere suggests what evidence should have been presented, though, or why such evidence would have changed the outcome.  Absent any such showing, there is no basis for a challenge to the presumption of competence in trial counsel strategy.  *See Hirschberg*, 988 F.2d at 1513.  The strategy here was obvious: there were dozens of phone calls presented to the jury that implicated McKnight in the drug conspiracy, and McKnight even stipulated he was the speaker in those calls.  (Tr. Trans. I [396], 38, 66.)  Kusatzky attempted to blunt the impact of those calls by attacking the credibility of the Government's chief witness, who was tasked with interpreting and decoding them for the jury. That strategy failed, but it does not follow that counsel was ineffective.  The strong deference this court affords to trial counsel's decisions disposes of this claim, as does the absence of any

proffer of potential evidence that might have altered the trial's outcome. *Cf. Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012) ("To avoid the inevitable temptation to evaluate a lawyer's performance through the distorting lens of hindsight, *Strickland* establishes a deferential presumption that strategic judgments made by defense counsel are reasonable." (citing *Strickland*, 466 U.S. at 690–691)).

### F. Ground Seven

Ground Seven has no merit. Petitioner chastises Kusatzky's decision to file a "motion to dismiss for lack of jurisdiction," claiming that the Seventh Circuit had already rejected such challenges. (Habeas Pet. at 10.) McKnight is correct that the motion had little chance of success, as Congress has conferred federal jurisdiction over "all offenses against the laws of the United States," 18 U.S.C. § 3231, and McKnight's offenses were violations of federal drug laws. *See* U.S.C. §§ 841(a)(1), 843(b) and 846. But he nowhere explains why the motion demonstrated Kusatzky's ineffectiveness or otherwise prejudiced him. Prejudice would be especially difficult to show here; Kusatzky's motion was filed six months after trial and could not have affected the outcome. Petitioner argues in his reply [16] to the Government's response [14] that it affected this court's sentencing decision. It didn't. It was clear that Kusatzky was merely preserving the issue for a potential appeal. (*See* Sentencing Trans. at 3:18–20 (noting that Kusatzky "preserved the objection for appeal".) In any case, no error has been demonstrated, no prejudice can be shown, and so the claim fails.

## II. Malicious Prosecution (Grounds Eight and Nine)

Next, Petitioner makes the following prosecutorial misconduct claims:

1. Rachel Cannon, Assistant United States Attorney, has been known for using p[er]jured testimony to secure a conviction. Accepting a broken agreement by Shawn Denton, displays a vindictiveness to prosecute to conviction of any and all accused. A prosecutor's job consist[s] of more than prosecuting, he or she must also guard the rights of the accused and enforce the rights of the public. The contract of cooperation is that one cooperates truthfully and fully or the agreement is void.

2. Rachel Cannon, A.U.S.A., used the District Court's dignity and integrity to shield her vindictive prosecutorial conduct. First. Getting the Court to allow her to slide underneath the time bar of 2006 (when the Petitioner allegedly joined the conspiracy) and reach back to 1997. Second. While Denton was on the stand, he impeached testimony of tyrannical activity of himself, Thompson, and others uncharged in the indictment. Third. Ms. Cannon introduces testimony of alleged street gang affiliation, plastering Petitioner (Defendant) with that stigma. Finally. Got the Defense and District Court to agree on not questioning the investigative techniques of the Government during trial. And then eased the jury instruction under the noses of the District Court which made Shawn Denton look like a confidential informant. This instruction is not even a true and accurate statement of the law.

These allegations would find support, if there were any, in the record at the time of Petitioner's direct appeal to the Seventh Circuit, and he offers no arguments for cause or prejudice to excuse his failure to raise them. *See Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991). They are, therefore, defaulted—and meritless, in any event. Petitioner has not identified a single piece of evidence to support his vague assertions of prosecutorial misconduct. Instead, he renews his attack on Denton's testimony and claims that because the government's attorney, Rachel Cannon, allegedly used false testimony in another case, *see generally United States v. Freeman*, No. 07-cr-843, 2009 WL 2748483 (N.D. Ill. Aug. 26, 2009) (granting a new trial on charges of conspiracy to distribute crack cocaine where the prosecutor appeared to vouch for demonstrably false testimony), McKnight is entitled to relief here.

These claims fail for lack of evidence. To state a claim of prosecutorial misconduct, Petitioner must establish that "(1) the prosecution's case included perjured testimony; (2) the prosecution knew, or should have known, of the perjury; and (3) there is a likelihood that the false testimony affected the judgment of the jury." *Simental v. Matrisciano*, 363 F.3d 607, 615 (7th Cir. 2004). This court expressly declined to find that Denton had perjured himself. (*See* Sentencing Trans. at 6:7–11 (in denying McKnight's motion for reconsideration of his motion for acquittal, "Well, assuming that your statement is an accurate statement of the law, that being that if the Court finds the testimony is perjurious, that Mr. McKnight is entitled to a judgment of acquittal, I have not found that Mr. Denton perjured himself.").) Petitioner presents no new

evidence for a perjury finding, and his claims of prosecutorial misconduct are, therefore, rejected.

## III.    Sentencing Errors: Ground Ten and *Allyene* Claim

Petitioner next brings two challenges to his sentence: He claims that the trial court erred in calculating the drug quantity for his base offense level because it relied on Denton's testimony, which Petitioner alleges is unreliable.  As explained above, however, drug quantity was not the controlling consideration in deciding Petitioner's sentence—his status as a career offender was. (*See supra*, Part I.D.)  Given that his base offense level was 37 and he has a Criminal History Category of VI, his sentencing ranging was 360 months to life irrespective of how much drug quantity was attributed to him for the purposes of calculating his Guidelines range.

Petitioner's claim based on *Alleyne v. United States,* 133 S. Ct. 2151 (2013), fares no better.[3]  Petitioner urges that *Alleyne* disposes of his drug quantity challenges in this appeal in his favor because, as the court understands his argument, he was entitled to have the jury find his drug quantity before he received a 20-year mandatory minimum sentence.  But the Seventh Circuit recently joined every other circuit to consider the issue and concluded that "*Alleyne* is not retroactive on collateral review," *Crayton v. United States*, ___F.3d ___, 2015 WL 3895767, *1 (7th Cir. June 25, 2015), so any challenge to Petitioner's drug quantity calculation based on that case is futile.  Further, *Alleyne* holds that facts that affect a statutory minimum must be submitted to a jury and proved beyond a reasonable doubt.  133 S. Ct. at 2158 ("Facts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt.").  Petitioner's 20-year mandatory minimum sentence stemmed from his previous conviction for a felony drug offense, *not* from his total drug

---

[3]     This court previously granted Petitioner's first motion to amend his complaint to add this claim premised on *Alleyne v. United States*, 133 S. Ct. 2151 (2013). (*See* Minute Entry August 26, 2013 [15].)  Whether his *second* motion for leave to amend his complaint is granted is discussed below, *see infra*, at Discussion Part VI.A.

quantity. (*See* Gov't 21 U.S.C. § 851 Motion, *United States v. Thompson*, 07-cr-263-04 [65], filed Aug. 10, 2007.) And *Alleyne* "does not require the fact of a prior conviction to be found by a jury." *United States v. Garrett*, 757 F.3d 560, 574 (7th Cir. 2014) (citing *Alleyne*, 133 S. Ct. at 2160 n.1).

## IV. Abuse of Discretion (Grounds Eleven, Twelve, Thirteen)

Next, Petitioner contends the trial court abused its discretion in several ways.[4]  The court discusses these claims in turn.

### A. Ground Twelve

Petitioner argues that the trial court erred in giving a "deceptive technique instruction that was not an accurate statement of law." (Habeas Pet. at 11.) This argument was already considered and rejected by the Court of Appeals, both in a published opinion and in a denial of McKnight's petition for rehearing *en banc*.  *See McKnight*, 665 F.3d at 787; *United States v. McKnight*, 671 F.3d 664 (7th Cir. 2012) (denying petition for rehearing *en banc*).  "A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (internal quotation marks and citation omitted). Absent changed circumstances, a petitioner may not raise issues that were brought in a direct appeal, *id.*, but that's what Petitioner attempts to do here. He offers no argument or source of law to establish changed circumstances, and the court similarly finds none. The court declines, therefore, to consider this issue.

### B. Ground Thirteen

Ground Thirteen alleges that the court "retained a prejudice[d] view of Petitioner (Defendant) throughout the entire proceeding." (Habeas Pet. at 11.) McKnight continues that his motion to reconsider his motion for a judgment of acquittal (*United States v. Thompson et al.*, 07-cr-263-04 [285]), presented the court with "overwhelming evidence that at its very least

_____

[4]     Ground Eleven, which charged the trial court with error for admitting testimony of acts that occurred in the conspiracy before Petitioner joined it, was previously discussed in the context of Petitioner's claims of ineffective assistance of trial counsel. *See supra*, at Part I.C.

brings into question the indicia of reliability and reliable [sic] doubt." (*Id.*)  Ignoring this evidence, McKnight argues, violates his due process and equal protection rights and subjects him to cruel and unusual punishment.  (Habeas Pet. at 11.)

Petitioner never made this argument during his direct appeal and makes no attempt to show cause and prejudice, so the claim is defaulted.  *See Borre*, 940 F.2d at 217.  Regardless, as this court stated in its ruling denying the motion for reconsideration, the court instructed the jurors to consider Denton's testimony with "caution and care."  (Minute Entry, May 18, 2010, *United States v. Thompson et al.*, 07-cr-263-04 [334].)  Granting the motion would have required the court to "assume the jury disregarded that instruction," and that the jury "disregard[ed] the evidence of recorded telephone conversations in which Mr. McKnight is heard discussing drug transactions." (*Id.*)  The court declines, again, the opportunity to make such assumptions, and observes that Denton appeared to the court to be a credible witness.  The court stands by its earlier rulings and denies this claim.

## V.     Cumulative Error (Ground Fourteen)

Ground Fourteen asks the court to view McKnight's habeas petition as sounding in "rectum rogue" [sic],[5] which McKnight contends means that when all the errors are viewed together, their collective effect was prejudicial.  *See United States v. Allen*, 369 F.3d 842, 846 (7th Cir. 2001) ("Cumulative errors, while individually harmless, when taken together can prejudice a defendant as much as a single reversible error and violate a defendant's right to due process of law.").   But that principle has no application here, as Petitioner has not identified even a single error, much less multiple errors, that "so infested the jury's deliberation that they denied the petitioner a fundamentally fair trial."  *See id.* (quoting *Alvarez v. Boyd*, 225 F.3d 820. 824 (7th Cir. 2000)).  The claim is denied.

---

[5]        The court is uncertain of the origin of this expression.  *Ad rectum* is a latin term that means "to right; to meet an accusation."  Black's Law (10th Ed. 2014).  Black's Law does not define rogue.  An online legal dictionary defines the term "rectum rogare" as follows: "To ask for right; to petition the judge to do right."   http://legaldictionary.lawin.org/rectum-rogare/ (last visited June 23, 2015).  The court accepts this definition for the purposes of this opinion.

**VI.    Appellant Counsel Errors (Grounds Fifteen and Sixteen)**

Lastly, Petitioner brings two claims against his appellant counsel, also governed by *Strickland.  See Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008).  That test requires Petitioner to show that his appellate counsel's performance was constitutionally deficient and that this deficiency prejudiced him.  *Id.*  Petitioner can show neither.

Petitioner first takes issue with appellate counsel's objection to the "deceptive investigative techniques" jury instruction.  Petitioner contends that counsel "strayed from Petitioner's viewpoint of the erroneous instruction" (Habeas Pet. at 12), but does not say what other arguments his counsel could have made, or explained why such other arguments would have made a difference.  Further, Petitioner argues that appellate counsel failed to raise issues Petitioner thought were "relevant" and only made a "frivolous" challenge to the IFRP.  (*Id.*) Again, he offers no alternative issues he would have raised, which is fatal to his ability to demonstrate a "reasonable probability that, but for the deficient performance of the attorney, the result of the appeal would have been different."  *Suggs*, 513 F.3d at 678 (citing *Strickland*, 466 U.S. at 694).

Besides, whatever arguments counsel did make appeared to have some purchase: the Court of Appeals accepted Petitioner's argument that the IFRP requirement could not be mandatory and modified his sentence accordingly.  *McKnight* 665 F.3d at 795.  Appellate counsel should not be faulted for *winning* an argument on appeal, however miniscule Petitioner believes the remedy to be.  And while the Court of Appeals panel rejected appellate counsel's argument that the jury instruction was prejudicial, *see McKnight*, 665 F.3d at 790–795, one member of the Court found the instruction sufficiently problematic to dissent from the Seventh Circuit's refusal to rehear the case *en banc.  See McKnight*, 671 F.3d at 665 (Posner, J., dissenting).  These facts cut strongly against the supposed ineffectiveness of his appellate counsel, too.  Petitioner must show that his "appellate attorney, in fact, ignored significant and obvious issues," *Suggs*, 513 F.3d at 678, and that the neglected issues were "clearly stronger"

than the arguments actually raised on appeal. *Id.* Instead of attempting to make such a showing, Petitioner simply declares that appellate counsel strayed from his (unexplained) "point of view" about the instruction. (Habeas Pet. at 11.) He therefore has not shown cause, much less prejudice. The claims are denied.

## VI.   Second Motion for Leave to Amend

In Petitioner's Second Motion for Leave to Amend [20], he seeks to

add evidence of certified court documents from the Cook County Illinois Circuit Court Clerk's Office, along with petitioner's attached affidavit proving a fact already delineated in the record. That the state drug conviction for Case No. 90C66111901 relied upon to enhance petitioner's sentence under 21 U.S.C. § 851, and later used as the second predicate offense to classify petitioner as a career offender under U.S.S.G § 4Bl.l is NOT PART of petitioner's official criminal history.

(Second Mot. for Leave to Amend at 2 (emphasis in original).) The proffered additional evidence establishes ineffective assistance of trial counsel, Petitioner asserts, as Kusatzky failed "to proficiently investigate petitioner's criminal history in its entirety," such that the prior state drug conviction for the above mentioned case was erroneously used as a predicate offense to classify Petitioner as a career offender under U.S.S.G. § 4B1.1. (*Id.* at 3.)

Petitioner alleges that Kusatzky told him that "the government had the case on record" and that Petitioner "probably d[idn't] remember being charged and convicted of the offense, but trust him because the government had the case." (Second Mot. for Leave to Amend at 6.) Petitioner claims he was never convicted of this offense, but that Kusatzky assured him that Kusatzky would "address the issue in later proceedings." (*Id.*) Kusatzky followed through, at least in part: He objected to the career offender enhancement, albeit only on the ground that Petitioner's guilty plea was not voluntary because he was never advised that the conviction could serve as the basis for a sentencing enhancement in a future conviction. (Objections to Presentence Investigation Report, *United States v. Thompson et al.*, 07-cr-263-4 [325], 2–3.) He did not argue that Illinois State Case No. 90C66111901 was not a part of McKnight's

criminal history and thus could not serve as a predicate offense for the purposes of the career offender guideline, *see* U.S.S.G. § 4B1.1.

Petitioner eventually acquired a copy of his official criminal history from Cook County Illinois Circuit Clerk Dorothy Brown. (*See* Ondray McKnight Official State Criminal History Record, Ex. B to Second Mot. for Leave to Amend at 7.) State criminal case number 90C66111901 was not listed on his official criminal record, and handwriting from an unknown person on the document states that "[t]hese are the only cases under [McKnight's] name." (*Id.*) This document confirms, Petitioner insists, that the case is not a part of his state criminal history.

## A. Timeliness

Before the court can even reach the merits of this motion, McKnight would have to satisfy the court that it is timely. The statute, 28 U.S.C. § 2255(f), requires § 2255 motions to be filed within one year after "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). "Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). In this case, the Supreme Court denied McKnight's petition for a writ of *certiorari* on June 11, 2012, so the deadline for filing his habeas petition was June 11, 2013. The original petition, filed on May 17, 2013, fell within that one-year period. This court allowed Petitioner's previous motion to amend his complaint, filed on August 14, 2013, even though the claim in that motion was untimely filed. (*See* Minute Entry August 26, 2013 [15].) Petitioner's second motion for leave to amend was filed on April 4, 2014, or nearly ten months after the filing deadline passed.

There are statutory and equitable exceptions to excuse claims filed out of time, but none apply in this case. For example, 28 U.S.C. § 2255(f) authorizes three statutory exceptions to the one-year deadline: Section 2255(f)(2) tolls the running of the one-year clock in instances where the Government caused some type of impediment to making a motion. McKnight does

not mention anything that could be construed as government action that prevented him from filing this motion (*see* Second Mot. for Leave to Amend), so § 2255(f)(2) does not apply. Section 2255(f)(3) allows untimely-filed claims when the Supreme Court has recognized a new right and made it "retroactively applicable to cases on collateral review," which isn't what Petitioner argues in his motion. Instead, Petitioner argues that new facts have surfaced that entitle him to relief, which makes § 2255(f)(4) the most promising of the statutory exceptions for him, if he can show that the one-year timeline should be tolled until a date on which "the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." But Petitioner offers no argument on this score. Notably, Petitioner did not send his letter to Dorothy Brown, Cook County's Circuit Court Clerk, until January 16, 2014, more than seven months after the deadline passed, without explaining why he did not pursue this avenue earlier. The facts were all there—the use of the case to deem him a career offender; the PSR's acknowledgment that it hadn't found a physical copy of the case file; and Petitioner's subjective knowledge of whether he did in fact commit the offense. Absent some type of extenuating circumstance not present here, Petitioner cannot satisfy § 2255(f)(4)'s exception.

The common law equitable exceptions won't help Petitioner, either. He makes no claim of "actual innocence" in his motion, so he can't avail himself of that exception. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). Perhaps his strongest argument is that the limitations period should be equitably tolled, but this Circuit has emphasized that equitable tolling is "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) (citation omitted). It is a "high bar," *id.*, and Petitioner cannot meet it on the record before this court.

Petitioner's second motion for leave to amend [20] is, therefore, untimely filed, and barred.

### B. Merits of Claim in Second Motion for Leave to Amend

Even if the second motion were timely filed, it fails on the merits. First, Petitioner's argument—that one of the predicate state criminal offenses used to deem him a career offender under the Guidelines does not, in fact, exist—is inconsistent with what he told Probation Officer Lisa Palmer, the author of his Presentence Investigation Report ("PSR"). Ms. Palmer noted that "defendant corroborated the above conviction [Case No. 90C66111901] and stated that the sentence was to run concurrent" with the 26-year sentence he received for first-degree murder. (PSR, *United States v. Thompson et al.*, 07-cr-263-4, Doc. [341], 15.) Second, Ms. Palmer noted that a Circuit Court of Cook County printout she retrieved explained that Petitioner used the alias "Issachar B. Hardy" for the alleged non-existent case but that in fact it was Petitioner's case. (*Id.*) Petitioner told Ms. Palmer "Issachar B. Hardy" is McKnight's cousin's name. (*Id.*) This might explain why it is not listed on IDOC's official criminal history for "Ondray McKnight." (*See* Ex. B to Second Mot. for Leave to Amend.) Ms. Palmer also noted that McKnight had provided that exact alias, sans middle initial, to law enforcement on other occasions. (*Id.* at 17.) Ms. Palmer checked with the Illinois Department of Corrections, and it further corroborated the case's existence under McKnight's real name. (PSR at 15.) Simply put, while it is possible that the conviction was not Petitioner's, the circumstances make that unlikely.

Assuming for the sake of argument that the conviction is in fact not part of Petitioner's record, that he should not have been deemed a career offender under United States Sentencing Guidelines § 4B1.1(a), there would still be no change in his sentence. At sentencing, the court concluded that McKnight's Guidelines offense level was 40 "for the reasons stated in the PSR, but not including the weapons enhancement." (*See* Sentencing Trans. at 40:3–5.) The PSR calculated the range as follows: McKnight received a base offense level of 38 for his drug offense, *see* § 2D1.1(a)(5), because the jury found him guilty of conspiracy to distribute a controlled substance, *see* 21 U.S.C. § 846, and the court adopted the PSR's finding that McKnight was responsible for supplying more than 11 kilograms of crack cocaine to the network

over the course of the conspiracy. (PSR at 11.) Under the November 2009 version of the Sentencing Guidelines, which were in effect at the time McKnight was sentenced, a crack cocaine quantity in excess 4.5 kilograms provides a base offense level of 38. From there, McKnight received a two-level enhancement for obstruction of justice (he failed to appear after his initial arraignment and lived under an assumed name and Social Security card number as a fugitive for 20 months). That increased McKnight's offense level to 40.

Turning to his criminal history, were he not deemed a career offender, he would have received three criminal history points for his first-degree murder conviction. *See* § 4A1.1(a). He likely would have received an additional two points because the "instant offense was committed less than two years following the defendant's release from custody" for his murder conviction. (*See* PSR at 16–17 (citing § 4A1.1).) Five criminal history points would have placed Petitioner in Criminal History Category III, which, coupled with an offense level of 40, has a sentencing range of 360 months to life, the same range as before. *See* Sentencing Table, Nov. 2009 U.S.S.G., Ch.5, Part A. His best case scenario (in which the court does not assign two criminal history points because he committed the offense within two years of his prior conviction),[6] would have given him a base offense level of 40 in Criminal History Category II, with a corresponding guidelines range of 324 to 405 months. His 300-month prison term was, therefore, still a below-Guidelines sentence.

Given these facts, Kusatzky did not render ineffective assistance to Petitioner by failing to challenge the career offender classification on this basis.

---

[6]     In Petitioner's memorandum detailing his objections to the PSR, he explained that his original parole date for the prior offense was in 2003. The PSR states that he violated his parole and was returned to custody in 2005 but was released four days later. (PSR at 15.) Petitioner asserts that his parole was not revoked and that he was simply detained on a suspicion of a violation that was never proven, which is why he was only in custody for four days. (*See* Def. Obj. to PSR, *United States v. Thompson et al.*, 07-cr-263-04 [325], 9–10.) At sentencing, the government stated that it was "unable to confirm" why Petitioner was returned to custody but that it would "give [Petitioner] the benefit of the doubt" on the issue. (*See* Sentencing Trans. at 10:13–24.)

**VII.    Certificate of Appealability**

After careful consideration, the court declines to issue a Certificate of Appealability for any issues Petitioner has raised.  For purposes of deciding whether a Certificate is appropriate, the court will assume resolution of the criminal record issue in Petitioner's favor.  If Petitioner was tagged for a conviction that was not in fact his own, his ineffective assistance claim could prove viable.  At least, the court might conclude that its ruling on this issue is one that jurists of reason could find debatable.  *See Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011).

Even so, Petitioner is not entitled to a Certificate of Appealability because he cannot clear the timeliness bar for that issue.  His claim was brought nearly ten months after the one-year filing deadline passed, and he has failed to suggest any reason to excuse his tardiness.  Given the relatively strict constructions that attach to exceptions to the one-year filing deadline, this court cannot conclude that his "antecedent non-constitutional issue," *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003)—whether his untimely motion fits within a statutory or common law exception to the one-year filing bar—is "substantial."  *Id.*  Importantly,

> If success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal.

*Id.*  Seventh Circuit precedent forecloses any pathway for Petitioner to receive a Certificate of Appealability for the issue raised in his Second Motion for Leave to Amend.

## CONCLUSION

For the reasons discussed above, the court denies Petitioner's habeas petition [1], and denies his Second Motion for Leave to Amend [20] his complaint, because the motion was filed after the one-year filing deadline passed.   The court declines to grant a Certificate of Appealability on any issue.  McKnight's motions for disposition [23, 25] are terminated as moot.  His motion to compel the government to answer the Second Motion for Leave to Amend [24] is denied.

ENTER:

Date:  July 1, 2015

REBECCA R. PALLMEYER
United States District Judge